

DEFENDANT'S EXHIBIT A

8/085
6·06·24
1/4/24

| STATE OF TENNESSEE 22ND JUDICIAL DISTRICT CIRCUIT COURT | SUMMONS | Case File Number 3707-24 |

**PLAINTIFF**
Alexis McDaniel

**DEFENDANT**
Happy Paws, LLC

**To: (Name & Address of Defendant)**

Happy Paws, LLC
c/o Alona Yakymchuck, Registered Agent
19501 East Country Club Drive, Apt 505
Aventura, Florida 33180

List each Defendant on a separate Summons

**Method of Service:**
☐ Certified Mail
☐ Lawrence Co. Sheriff
☐ *Comm. Of Insurance
☐ *Secretary of State
☐ *Out-of-County Sheriff
☐ Private Process Server
☐ Other
*Attach Required Fee

YOU ARE HEREBY SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CIRCUIT COURT, LAWRENCE COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU. YOU ARE DIRECTED TO FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW. IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.

**Attorney for Plaintiff or Plaintiff if filing Pro Se:**
(Name, address & telephone number)

Wesley Mack Bryant
33 Public Square
Columbia, TN 38401
931-398-5200

~~TOMMY LEE KIDD~~
240 West Gaines Street
Lawrenceburg, TN 38464
BY: /s/ Sandy Dewton
Deputy Clerk, Circuit
Date Issued & Attested: 1-3-24

**TO THE SHERIFF:**

Please execute this Summons and make your return within ninety (90) days of issuance as provided by law.

**DATE RECEIVED:**

Sheriff/Officer Signature:

BY: _____

SEE REVERSE SIDE FOR RETURN AND EXEMPTION NOTICE

## RETURN ON PERSONAL SERVICE OF SUMMONS

I certify and return that on the _____ day of _____, 20___, I served this Summons and Complaint/Petition on _____ in the following manner: ☐ hand delivering ☐ left with _____.
☐ Failed to serve this Summons within 30 days after its issuance because _____
_____.

_____
Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the Summons and a copy of the Complaint in the case # _____ on the _____ day of _____, 20___. to the Defendant _____ on the _____ day of _____
I received the return receipt, which had been signed by _____ on the _____ day of _____, 20___. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

Sworn to and subscribed before me on this _____ day _____, 20___.

_____
Plaintiff, Plaintiff's Attorney or Other Person Authorized by Statute to Serve Process

Signature of ☐ Notary Public or ☐ Deputy Clerk
My Commission Expires: _____

### NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):
.....Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.
Mail list to Clerk & Master
    Lawrence County Courthouse
    240 West Gaines Street, NBU #13
    Lawrenceburg, TN 38464
Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

### CERTIFICATION (IF APPLICABLE)

I, Kristy Gang, Clerk & Master of the Chancery Court in the State of Tennessee, Lawrence County, do certify this to be a true and correct copy of the original Summons issued in this case.

KRISTY GANG, Clerk & Master

By: _____ D.C.& M.

IN THE CIRCUIT COURT FOR LAWRENCE COUNTY, TENNESSEE

AT LAWRENCEBURG

| | | |
|---|---|---|
| ALEXIS MCDANIEL, | ) | |
| Plaintiff, | ) | |
| VS. | ) | NO. 3707-24 |
| HAPPY PAWS LLC, | ) | |
| Defendant. | ) | |



## COMPLAINT

Comes now the Plaintiff, Alexis McDaniel, by and through undersigned counsel, and would sue the Defendant, Happy Paws, LLC, for the torts outlined infra hereto and as follows:

### PARTIES

1. The Plaintiff is Alexis McDaniel, who is a resident of Lawrence County, Tennessee, residing at 272 Powdermill Hill Road, Lawrenceburg, TN 38464.

2. The Defendant, Happy Paws, LLC, is an active Florida Limited Liability Corporation with a principle place of business at 19501 East Country Club Drive, Apt. 505, Aventura, Florida 33180 and with Alona Yakymchuk as the registered agent for said LLC with Ms. Yakymchuk having the same address as the LLC's principle place of business. The Defendant owns and operates the online website happypawsus.com. Through its website, the Defendant holds itself out as a company that will obtain various breeds of cats from around the world, including Maine Coon cats from Ukraine, for purchase to individuals in all 50 states, including Tennessee.

## JURISDICTION AND VENUE

3. The allegations contained in this Complaint are for breach of contract, negligence, and fraud between the Parties. Plaintiff is a resident of Lawrence County, Tennessee. Defendant is a resident of Florida doing business with individuals in Tennessee. Thus, pursuant to Tenn. Code Ann. § 20-2-214, jurisdiction and venue are proper in this Court.

## FACTS

4. On October 12, 2022, the Plaintiff, via the online website of happypawsus.com, contracted for the Defendant to obtain a Maine Coon cat, named Hera (hereinafter Hera I). The agreement was for the Defendant to obtain the cat from Ukraine and to fly it to the Plaintiff in Tennessee. Upon information and belief, such a flight would require Hera I to obtain a Certificate of Veterinary Inspection ("CVI") from a veterinarian advising that the cat was healthy enough and not contagious and thus cleared to fly. Plaintiff paid Defendant $4,200.00 for the costs of the cat and shipping ($3,650 for the cat and $550.00 for shipping).

5. According to communications from the Defendant, the Defendant received Hera I from Ukraine on November 8, 2022 and took Hera I to a vet on November 15, 2022.

6. On November 15, 2022, the Defendant texted Plaintiff and advised that the vet would not issue the CVI because the cat "had scratched it's nose." The Defendant advised that the vet issued some antibiotic drops and requested they come back in few weeks to see if the cat was well enough for the CVI.

7. On that same day, Plaintiff requested and received from the Defendant the vet's contact information.

8. The Plaintiff called the vet that same day. The vet advised the following:

a. That the Defendant had taken Hera I to them a week prior and that the vet had prescribed antibiotic drops at that time with a follow up for November 15, 2022.

b. That that the cat was still sick on November 15, 2022, and that the vet had recommended to the Defendant to run tests to determine what exactly was going on, but the Defendant refused the tests and opted instead to just continue the antibiotic drops with a follow up on November 21, 2022.

c. The vet advised the Plaintiff not to take Hera I because the cat was sick.

9. On November 21, 2022, Hera I was still sick, and the vet refused to issue the CVI. At that time, the Plaintiff advised the Defendant that she would not take Hera I and the Parties agreed to locate a replacement cat to fulfill the contract.

10. On November 25, 2022, the Parties agreed to a second cat named Paula (herein after Hera II). The costs of Hera II was $650.00 more than Hera I.

11. According to the Defendant, Hera II arrived on December 22, 2022.

12. According to the Defendant, she took Hera II to the vet on December 28, 2022.

13. According to the Defendant, the vet refused to issue a CVI due to "respiratory issues."

14. On December 29, 2022, the Defendant facetimed the Plaintiff while Hera II was at the vet and advised that Hera II had some sort of respiratory infection and prescribed antibiotics with a follow-up appointment for January 3, 2023.

15. On January 3, 2023, the Defendant advised the Plaintiff that the vet had issued the CVI and sent the Plaintiff a copy of same. Due to the Defendant's actions concerning Hera I as well as the ultimate health of Hera II, the authenticity of said CVI is now in question.

16. The Defendant flew Hera II to the Plaintiff on January 4, 2023.

17. The Plaintiff picked Hera II up from the airport and went straight to her vet at Northside Animal Hospital.

18. Dr. Mark Short advised that Hera II was still sick and prescribed antibiotics with a follow up.

19. From January 4, 2023, to her death on May 5, 2023, Hera II was seen by Dr. Short 4 times and was never completely well.

20. Around April of 2023, Plaintiff began to notice that a litter of Maine Coon cats she had from a cat she had purchased well before Hera II, were also getting sick. There were five kittens total from that litter.

21. As a result, all of Plaintiff's cats were put on antibiotics (a total of 9 cats, including Hera II)

22. Hera II died on May 5, 2023.

23. On May 6, 2023, Plaintiff took Hera II's body for a necropsy to determine the cause of death to determine if the kittens and other cats were in danger.

24. On June 1, 2023, Plaintiff received the necropsy results indicating that Hera II died of complications from chronic intussusception. The report found that Hera II had feline hemotropic mycoplasmosis ("FHM").

25. Hera II's FHM resulted in the death of four of the five kittens from the litter.

26. Plaintiff sells her Maine Coon kittens for $3,500.00 per kitten. Due to the surviving kitten's advanced age (due to not being able to be sold at peak age due to sickness), that kitten was only sold for only $2,000.00.

27. Plaintiff incurred $4,225 in veterinarian costs for both Hera II and the kittens due to Hera II's FHM.

28. In anticipation of selling the kittens, Plaintiff incurred advertising costs of $3,320.00.

## CAUSES OF ACTOIN

**Breach of Contract**

29. Plaintiff incorporates the allegations contained in Paragraphs 1-28 of this Complaint.

30. The Parties entered into a contract for the sale and purchase of a healthy Maine Coon cat, to wit: Hera II.

31. The purchase price of Hera II was $4,850.00, inclusive of shipping.

32. The Defendant failed to provide the Plaintiff with a healthy Hera II.

33. As such, the Defendant breached the contract with the Plaintiff resulting in damages to the Plaintiff.

**Negligence**

34. Plaintiff incorporates the allegations contained in Paragraphs 1-28 of this Complaint.

35. Defendant owed a duty to Plaintiff to inform her of the health condition of Hera II, including but not limited to Hera II's contraction of FHM.

36. Defendant breached this duty when it knew or should have known that Hera II was unfit for sale due to the cat's overall sickness and specifically due to the cat's contraction of FHM.

37. Defendant's failure to exercise due care concerning the health Hera II and lack of information to the Plaintiff concerning same resulted in damages to the Plaintiff including, but not limited to, the loss of the purchase price for Hera II, the cumulative vet expenses for Hera II, as well as all of Plaintiff's other cats, and the loss of life and income due to same of the 4 kittens.

### Negligent Misrepresentation

38. Plaintiff incorporates the allegations contained in Paragraphs 1-28 of this Complaint.

39. The Defendant, while acting in the course of its business, negligently informed the Plaintiff that Hera II was healthy and fit for travel.

40. The Defendant intended the Plaintiff to rely upon this information to complete the purchase of Hera II.

41. Plaintiff reasonably relied upon said representation to her determent causing economic loss.

### Intentional Misrepresentation

42. Plaintiff incorporates the allegations contained in Paragraphs 1-28 of this Complaint.

43. The Defendant falsely made a representation to the Plaintiff that Hera II was healthy and fit for travel.

44. The Defendant knew that Hera II was not healthy and fit for travel when it made the statement.

45. Alternatively, the Defendant recklessly represented to Plaintiff that Hera II was healthy and fit for travel, without knowing whether same was true or false.

46. The Defendant intended for Plaintiff to rely upon said statement to complete the purchase of Hera II.

47. The Plaintiff did not know that Hera II was not healthy and unfit for travel.

48. As a result of the Plaintiff's reasonable reliance upon Defendant's statement that Hera II was healthy and fit for travel, the Plaintiff sustained damages.

## PRAYERS FOR RELIEF

1. That this Court enter an Order finding Defendant in breach of the contract concerning the sale of the Hera II and that the Plaintiff has damages of $4,850.00.

2. That this Court enter an Order finding that Defendant breached its duty to the Plaintiff concerning the health of Hera II and that said breached caused the Plaintiff to suffer damages in the amount of $27,895.00.

3. That this Court enter an Order finding the Defendant negligently mispresented the health of Hera II to the Plaintiff and that said negligent misrepresentation resulted in Plaintiff suffering damages in the amount of $27,895.00.

4. That this Court enter an Order finding that Defendant intentionally mispresented the health of Hera II to Plaintiff and that said negligent misrepresentation resulted in Plaintiff suffering damages in the amount of $27,895.00.

5. That upon a finding that the Defendant intentionally misrepresented the health of Hera II, that this Court find that same is outrageous conduct that shocks the conscience such that punitive damages are justified.

6. For such further and general relief as this Court may deem fit and proper including, but not limited to, pre- and post-judgment interest on any judgment entered in this matter.

Respectfully submitted,

PARKS, BRYANT & SNYDER, PLLC

By:_____
Wesley Mack Bryant, #022035
Attorney for Plaintiff
33 Public Square
Columbia, TN 38401
(931) 398-5200

## COST BOND

We are surety for the costs of this cause, not to exceed the sum of One Thousand Dollars ($1,000.00).

PARKS, BRYANT & SNYDER, PLLC

By: _____
Wesley Mack Bryant